Parker, C. J.,
delivered the opinion of the Court. This case is to be considered without reference to any particular form of action, so that if a declaration in assumpsit could be formed, which could be supported by the evidence offered by the plaintiff at the trial, giving it its utmost weight, and without regard to any evidence of a contrary tendency, which the defendants might be in possession of, a new trial is to be had, with leave to form a declaration accordingly.
We have considered the case in this liberal and extensive view, ■and are satisfied that no action can be maintained against the present defendants, upon the notes which were offered at the trial, without proof that they were issued by the new corporation, as their own notes, and with a view to adopt them as such, instead of issuing notes of their own. Indeed, we are not clear that, with such proof, the defendants would be answerable, unless it were likewise *58 proved that the company, by some vote or other legal act, had authorized the directors or officers of the corporation to bind them in this unusual way. Such a state of facts, without the last-mentioned evidence, would prove that the officers, who had so undertaken to pledge the credit of the bank, had acted unwarrantably, and wholly beyond the authority resulting from their trusts and offices; and in so doing they could not implicate the stockholders or company, who are supposed to rely upon the faithful and correct discharge of duty by their agents and servants.
The numerous stockholders in a bank, scattered as they often are over all parts of the commonwealth, would be in an extremely unsafe situation, if their property was bound by the irregular transactions, or by the declarations or confessions, of their officers, beyond the legal sphere of their action. It is true that it is not required that corporations should act altogether by * seal; but their powers and their liabilities are still limited by the usual principles of such institutions, and their officers are restricted to such modes of binding the company as result from the nature of their duty, and the powers vested in them by their offices.
The two banks, which have the same name, are necessarily two distinct corporate persons, both having legal existence together, but neither being answerable for the notes, promises, or obligations, of the other. They, unfortunately, had the same persons for president and cashier — a circumstance which has caused much confusion, and no little mischief. The one last incorporated could, however, be under no obligation to pay the debts of the other, unless by some corporate act they had adopted such debts. The confessions of their officers, or any conversation of theirs, tending to create a belief, that the bills of the old bank would be paid by the new, could not be admitted as evidence against the corporation.
There may have been great fraud practised by the persons who had the management of the affairs of these banks, mixed up, as they were, with the same officers, and a confusion of property. But fraud cannot be imputed to the company. It is individuals alone, who by -their conduct have led people into a belief, that the new bank was responsible for the notes of the old; and it is these individuals who are liable civilly to the party injured by their conduct; or criminally, if, with a fraudulent view, and with purposes of speculation for their own profit, they have done any thing which amounts to a cheat upon the public.
The ground upon which the counsel for the plaintiff suppose that the action can be maintained, is by showing that the notes which ore sued in this action, were in fact issued by the new bank as they *59 own notes, and with a view to have them considered as evidence of their own promises. If this were made out by suitable evidence, the case might require more consideration; but even then, the question would arise, whether the officers of the bank could thus bind the company, unless * some authority, express or implied, was proved to have been given to the directors or officers, who adopted so unusual a mode of transacting business.
But if such facts were proved, they must be made to apply to the notes upon which the company should be sued; for it would be inadmissible that the new bank should be responsible for all the notes of the old company, because they had adopted and passed some of them as their own. Yet this is the legal inference, acknowledged to result from a decision in favor of this action, upon the evidence which is offered; nothing further being expected to be proved, than a presumption that these notes were issued because other notes had been. And thus the new bank would be made responsible for the whole amount of the outstanding debts of "the old, whether in the hands of the original receivers, or of speculators who may have purchased them for a trifle in the discredited state in which they have been for a long time placed. This would certainly be unjust, and would be carrying the principle of liability for the conduct of agents to an extent never before thought of.
It has been urged in argument, that the principles which are applied to contracts made by agents for another, upon an authority implied from former employment of the same agent for similar purposes, would be justly applicable to the defendants in the case before us. But there is a material difference. The individual stockholder commits no authority to its officers, but that which is given by the charter of incorporation, and by a vote of a major part in interest of the individuals acting in a corporate form. No sanction of any act, beyond the authority so derived, can be implied by the repetition of such act. For the company as such, or the individuals composing it, might not, and generally would not, know of any transactions of this singular nature. They may reasonably trust that the duty of each will be faithfully performed.
But the principle contended for, will carry the doctrine even beyond that which has been applied, in some # instances, to the cases of masters and servants, or principals and agents, in mercantile concerns. The whole of that doctrine is, that when the principal appears to have given unlimited authority to an agent to contract for him, by signing his name to bills of exchange, promissory notes, or other commercial paper, he shall not be permitted to deny such authority in any particular contract *60 which appears to have been taken on the faith of authority so given; but the authority shall be implied. In such cases, however, the identical contract, which is attempted to be enforced against the principal, must be proved-to have been made by the agent, for the principal. But in the case at bar, the utmost that the evidence offered could prove is, that other notes had been taken and issued by the bank which is sued in this action ; and whether the notes now sued ever were so issued, would still rest in conjecture, or at most but slight presumption ; unless it could be proved that all the notes of the old bank had passed through the new in this manner, which has not been supposed in the argument.
Upon the whole, nothing appears in this case, but that these banks Were unfortunately and imprudently managed, originally, it may be presumed, without any view to mischief; and that the new bank received in payment, and paid away, the notes of the old, in the same manner this and other banks did, with all bank notes, which were called current; with this only difference, that the officers in the new bank, either from too great confidence in the old, or for sinister purposes of their own, upheld the credit of the notes by endeavoring to connect them with the new institution; a conduct for which they may be personally liable, but which ought not and cannot prejudice the company, whose interests and character they abused, (a)

Motion to set aside the nonsuit overruled.

 [Salem Bank vs. Gloucester Bank, 17 Mass. Rep. 1.— Foster vs. Essex Bank, 17 Mass. Rep. 479.— White vs. Westport C. & M. Co., 1 Pick. 215. — Prop. Canal Bridge vs. Gordon, 1 Pick. 297.