THOMPSON, Receiver First Nat. Bank Sioux Falls, Appellant, *v.* McKEE, Respondent.

**1. Evidence—Parol to Vary Indorsement—C. C. § 921.**

Where M. indorsed a draft, without any words of explanation or limitation, under section 921, C. C., providing that the execution of a contract in writing supersedes all oral negotiations or stipulations that preceded or accompanied it, he will not be permitted to affect his liability as an indorser by showing that he merely identified the party that received the money; that he put his name on the back of the draft at the request of the cashier, who stated he wanted it for the purpose of showing who made the identification, and assured him (M.) he should sustain no liability thereby.

**2. Banks and Banking—Authority of President and Cashier.**

Where M., who went to a bank to identify W., at the request of the cashier wrote his name on the back of a draft, the cashier assuring

him that he should not be held liable on it, his name being wanted merely to show who identified W., and M. afterwards gave his note to the bank for the amount of the draft it had cashed, with an understanding with the cashier that his liability on the note should not be greater than it was on the draft, and he subsequently renewed this note with a similar understanding with the president and cashier, *held*, in an action by the receiver of the bank on the second note, (1) that M. would not be permitted to vary the terms of his liability as an indorser on the draft by parol; (2) that the facts constituted no defense, for the cashier and president had no authority to make any such contract.

**3. Same—Bank Officers—Powers.**

The officers of a bank have no power to modify obligations on the faith of which the bank has parted with its funds.

FRANCIS, J., dissenting.

(Argued May 19, 1887; reversed, May 26; opinion filed February 24, 1888.)

Appeal from the district court of Minnehaha county; Hon. C. S. PALMER, Judge.

*Coughran & McMartin,* for appellant.

On the powers of banks and their officers, see section 5136, R. S. U. S., subsecs. 5, 7; Ball, Nat. Banks, 49; Morse, 107–109.

A cashier has no authority to make any statement to a person about to become an indorser, releasing any liability. Morse, 152–157, 189, and cases cited; Ball, 60–63; *Chemical Nat. Bank* v. *Kohner,* 58 How. Pr. 267; *Bank of U. S.* v. *Dunn,* 6 Pet. 51; *Bank of U. S.* v. *City Bank,* 21 How. 356; *First Nat. Bank of Whitehall* v. *Tisdale,* 18 Hun, 157; *Bank of Metropolis* v. *Jones,* 8 Pet. 12; *Davis* v. *Randall,* 115 Mass. 547; *Hodges* v. *First Nat. Bk. Richmond,* 22 Gratt. 51; note to *Merchants' Bank* v. *State Bank,* Thomp. Nat. Bank Cas. 64; *Olney* v. *Chadsey,* 7 R. I. 224.

The president has no power, unless given it by board of directors, to make any contract in behalf of the bank save only that of employing counsel. Morse, 144–157; *Brouwer* v. *Appleby,* 1 Sandf. 158; *Bank of Metropolis* v. *Jones,* 8 Pet. 12; *Spyker* v. *Spence,* 8 Ala. 333; Ball, 59–62.

An indorser or maker of a negotiable instrument cannot show

by oral evidence against his indorsee that it was agreed that he should not be liable, or that his indorsement was only for purposes of identification. Daniels, Neg. Ins. §§ 717–719; *Prescott Bank* v. *Caverly*, 7 Gray, 217; *Stack* v. *Beack*, (S. C. Ind. Sept. 1881,) Cent. Law J. Oct., 1881, p. 317; *U. S.* v. *Dunn*, 6 Pet. 59; *Bank of Metropolis* v. *Jones*, 8 Pet. 12; *First Nat. Bank* v. *Tisdale*, 18 Hun, 151; *Davis* v. *Randall*, 115 Mass. 550; *Thatcher* v. *West River Banks*, 19 Mich. 196; Ball, Nat. Banks, 102; *Brown* v. *Spafford*, 95 U. S. 474; *Specht* v. *Howard*, 16 Wall. 564; *Martin* v. *Cole*, 104 U. S. 30–40; Parsons, Notes & Bills, 591; *Cox* v. *Bank*, 100 U. S. 713; *Forsyth* v. *Kimball*, 91 U. S. 291; sections 921, 931, C. C.; Morse, 149; *Wright* v. *Morse*, 9 Gray, 337; *Allen* v. *Farbish*, 4 Gray, 504.

Persons dealing with the bank are presumed to know the extent of the general powers of a cashier. *Farmers* v. *Mechanics' Bank*, 1 Doug. (Mich.) 457.

The extent of the general powers of the cashier of a bank is a question of law, and not of fact. Id.

*Bailey & Davis*, for respondent.

Two successive notes were given for the amount of the draft, but each was upon the express agreement that the note should not increase the defendant's liability.

Even without this agreement, the question of liability would rest on the original transaction in relation to the draft. If defendant was not liable on that, then there was no consideration for the notes. It was upon this theory that the court submitted the case to the jury. In so doing there was no error. *Hill* v. *Buckminster*, 5 Pick. 391.

The question then recurs, did the defendant make himself liable as an indorser by placing his name on the draft simply for the purpose of enabling the plaintiff to know who identified Wolfe? If so, it is in direct contradiction of one of the essentials of a contract,—the assent of the parties. The defendant was never a party to the draft.

Under the facts found there was no consideration for a legal

liability on the part of the defendant. The plaintiff parted with nothing on the strength of his signature. It relied in no pecuniary sense upon his name. It did not consider him an indorser. It never made demand, nor gave any notice of protest. His name was placed there for an entirely different purpose.

Want or failure of consideration may always be shown by parol between the original parties. *Burnham* v. *Allen*, 1 Gray, 496; *Hubbard* v. *Galusha*, 23 Wis. 398; *Hillsdale College* v. *Thomas*, 40 Wis. 661.

It was done at the request of plaintiff; not for Wolfe's accommodation. Wolfe did not so even request. He was not an accommodation indorser for Wolfe.

In this respect the case differs materially from the one where a person becomes an indorser with the understanding that he shall not be holden as such. In the latter case the verbal understanding may be said to contradict the written obligation. In this case defendant was not an indorser. It was agreed by both parties that he should not be. Hence the verbal agreement does not contradict the written, but shows what it was,—explains the transaction.

Parol evidence is admissible between the immediate parties to carry their intention into effect, and show the facts and circumstances of the transaction. *Gerard Bank* v. *Comley*, 2 Miles, (Pa.) 405; Dan. Neg. Inst. §§ 710, 711; *Good* v. *Martin*, 95 U. S. 95; *Bruce* v. *Wright*, 3 Hun, 548; *Harrison* v. *McKim*, 18 Ia. 485; *Skinner* v. *Church*, 37 Ia. 91; *Davis* v. *Brown*, 94 U. S. 423–429; *Johnson* v. *Martinus*, 9 N. J. Law, 144.

If the cashier had authority to solicit the defendant to put his name on the draft, then the representations, conditions, and agreements under which it was done, will bind the principal. Story, Ag. 134, 135; *Rinesmith* v. *Peo. Ft. Ry. Co.*, 90 Pa. St. 262; *McDonough* v. *Heyman*, 38 Mich. 334.

If he had no authority, and the bank ratified his act, it must ratify the whole transaction as it occurred. Story, Ag. 250.

The same may be said in reference to taking of the successive notes.

SPENCER, J.   This is an action upon a promissory note bearing date April 21, 1885, executed by the defendant to the order of the First National Bank of Sioux Falls for $1,000. The plaintiff is the receiver of said bank. The incorporation of the bank, execution and delivery of said note by the defendant, and the appointment of plaintiff as receiver, are admitted by the answer.   As matters of defense, it is alleged in the answer, in substance, that the note in suit was given in renewal or to take place of another of like amount, made April 8, 1884, between the same parties; that said last-mentioned note was given for the amount of a draft which plaintiff had cashed in June, 1884, for one Henry Wolfe, and on which said defendant's name appeared as indorser; that said defendant went with said Wolfe to said bank for the purpose of identifying him, and while there, and when Wolfe presented said draft, the cashier asked defendant to indorse it, which he at first declined to do, but upon the cashier's statement to him that he only desired his name for the purpose of showing who identified Wolfe, and that he should not be held liable on said draft if he indorsed it, he did put his name on its back; that the first note was given by said defendant to the bank with the understanding and agreement that defendant's liability thereon should not be greater than it was on said draft, and that in any event he should not be called upon to pay more than $600 on said note; and that the note in suit was given under similar circumstances, and with a like agreement and understanding between the president and cashier of said bank and the defendant, and in renewal of said first note.

Upon the trial of the action, the plaintiff produced the note in suit, read it in evidence, proved he found it among the assets of the bank when he took possession, that payment of it had been duly demanded of the defendant, and rested his case.

Plaintiff then objected to the admission of any evidence on the part of the defendant, on the ground that the answer did not state facts sufficient to constitute a defense. The objection was overruled, and the plaintiff excepted. The defendant was sworn in his own behalf, and testified, substantially, to the facts

as alleged in the answer. At the close of his testimony the defendant rested, and thereupon the plaintiff moved the court to direct the jury to return a verdict for the plaintiff, upon the ground, among others, that the facts as established by defendant's evidence did not constitute a defense; which motion was also overruled, and the plaintiff excepted. No other evidence was offered by the defendant, and at the close of all the evidence the plaintiff renewed his motion for the direction of a verdict in his favor, upon the grounds heretofore stated; which was again denied, and plaintiff excepted. The case was then submitted to the jury, under instructions from the court, and the jury returned a verdict in favor of the defendant. The plaintiff moved for a new trial, upon the grounds, among others, stated in the motions aforesaid; which motion was denied, and the plaintiff appealed to this court.

1. There is no pretense that there was any ambiguity about the draft, or the indorsement of it by the defendant, which requires evidence to explain its meaning; nor is there any claim that it was indorsed by the defendant through mistake, fraud, or inadvertence. On the contrary, the draft seems to have been in the usual form of such instruments, and was indorsed by the defendant, unaccompanied by any words of explanation or limitation as to his liability thereon. He thereby made a contract with the bank which was absolute and unequivocal on its face, and was to the effect that the draft was genuine, and would be paid upon presentment at the time and place it was by its terms made payable, or that in default thereof he would himself pay it on demand. The allegations of the answer, and the evidence which the defendant was permitted to introduce against plaintiff's objections, are to the effect that he did not make such agreement. The general rule of law that parol evidence is inadmissible to vary, contradict, or explain an agreement which has been reduced to writing is well understood, and has found expression in section 921 of the Civil Code of this territory.

Proof of the facts alleged in the defendant's answer could have no other effect, and could have been offered for no other pur-

pose, than to contradict, vary, and impair the written agreement which the defendant made with the bank when he indorsed the draft. In no other way than by contradicting this agreement could the defendant have established the defense alleged in his answer. The court erred, therefore, in admitting the testimony of the defendant, under plaintiff's objection, to prove such facts, because the tendency, purpose, and effect of such testimony was to contradict, and did in fact contradict, the written agreement of the defendant. A similiar question was before the court in the case of *Davis* v. *Randall*, 115 Mass. 547, where the defendant offered to prove as a defense that he accepted certain drafts, on which the action was brought, for the accommodation of another, and that before they were accepted the president of the bank agreed orally that he should not be called upon to pay the draft; and it was held that proof of such an agreement was incompetent, for the reason that it violated the rule of law that oral evidence was inadmissible to vary or control the terms of a written contract.

This precise question has been the subject of judicial investigation in several cases very analogous to the one at bar, and the decisions have uniformly sustained this view, (*Bank* v. *Dunn*, 6 Pet. 57; *Bank* v. *Jones*, 8 Pet. 14;) and the general rule is well established.

2. Another fatal objection to the defendant's position is that, assuming that the facts alleged by him are true, and that evidence in support of them was admissible, still they constitute no defense to his liability on the note in suit, for the reason that the cashier or president of the bank had no right or authority to make any such contract that would bind the bank. Officers of banks are but its agents, and, like other agents, can only bind their principals when acting within the scope of their authority. It is not within the province of a cashier or president of a bank to excuse the obligations of persons liable to it, either as principal debtors or accommodation makers or indorsers without payment.

And it has been repeatedly held by the highest judicial tri-

bunals that officers of banks have not the power to excuse or limit the legal obligations of persons to the banks they represent, by agreeing with them that they shall not be held liable or called upon to pay the obligations which they make, either as principal debtors or accommodation makers or indorsers, and on the credit of which the bank has parted with its funds.

In the case of *Bank* v. *Dunn*, 6 Pet. 57, it was so held; and in the case of *Bank* v. *Jones*, 8 Pet. 14, where this question was under consideration, the court made use of this language: "The discharge of the indorser was urged, on the ground that certain statements had been made by the officers of the bank which induced the indorser to sign the paper under a belief that by doing so he incurred no legal responsibility. As the ground already is clear, it is unnecessary to add in this case, as was stated by the court in the *Case of Dunn*, that the officers of the bank had no authority, as agents of the bank, to bind it by the assurances which they gave." The same doctrine was held in the cases of *Bank* v. *Tisdale*, 84 N. Y. 655, and *Wyman* v. *Bank*, 14 Mass. 58, and is decisive of the case at bar.

It follows that plaintiff's motion to direct a verdict for the plaintiff should have been granted, and that the court erred in overruling said motion. We are therefore of opinion that said judgment must be reversed, and a new trial ordered.

All concur, except FRANCIS, J., dissenting.